The opinion of the court was delivered by
Blanchard, J.
This case is before the court for the second time. See 51 La. Ann. 1158, where the facts are stated.
In the opinion then handed down it whs held that the second community of acquets and gains was not alone before the court for settlement and partition of property, hut that the affairs of the succession of the dead husband were likewise before it for settlement, and that this involved the consideration and adjudication of all claims and counter claims between the parties in interest.
It was there further held that the.debt of the husband to the wife of a former marriage for paraphernal funds and property received and used by him during the marriage, transmitted to her son as heir of his dead mother, retains its separate, independent character and is not merged into the father’s tutorship liability for funds and property belonging to 'his ward; that there was no legal fiction justifying the assumption that the paraphernal debt had been paid by himself as bus- *2114 band over to himself as tutor; that when the minor reaches the age of majority he is not required to obtain the recognition and enforcement of such claim ■ through an action for an accounting; and that a claim of that character is not barred by the-prescription of four years, to which claims for amounts received by a tutor for his ward during the tutorship is subject.
The decree in the case at that hearing settled the matter of the amount due by the second community to the succession of the husband by increasing the same to the sum of $10,000.00; it maintained the prescription of four years as against any demand asserted by E. S. Kidd on account of moneys received by his father in his capacity as tutor; it recognized the right of the co-heirs and widow in community to a partition of property; it reversed the judgment of the District Court rejecting the demand of E. S. Kidd against his father’s succession for paraphernal funds and property received by the father during the first marriage and converted to his own use, and left that issue open for new trial in the court a gua¿ and remanded the cause for further proceedings according to law in respect to the matters thus left open.
By this decree, it will be seen, all matters at issue were finally adjudicated, save as to partition of the property, and save as to E. S. Kidd’s-claim to recover his mother’s paraphernal rights.
As to the partition, it was, in effect, ordered to be made, leaving to the District Court the determination as to whether it should be in kind or by licitation.
The judgment of that tribunal ordered the partition and directed that all the property, rights and credits pertaining to the Succession of J. I.. Kidd be sold at public auction to effect the same, and that from the proceeds of the sale there be first paid the court costs, $250.00 the amount of the recognized paraphernal claim of the second wife, and $10,000.00' the amount due the legal heirs of the deceased; and that the remainder of the proceeds be divided into two equal parts — one part to be paid to the second wife as widow in community, the other part to the legal heirs of the husband.
As to the paraphernal claim of the first wife, the demand of E. S. Kidd, her son and heir, therefor, was again rejected.
He appeals.
The second wife, as widow in community an,d as tutrix, to her minor children, by answer to the appeal, prays that the judgment be so amend *2115 •ed as to refuse partition of the property at this time, andi that if this be not done, then that a partition in kind be ordered. ■ •
To this a sufficient reply is that the right to the partition was adjudi-. Gated when the case was before this court the first time, and in directing the same to be made the judge a quo only carried out the instructions' given him. ITe evidently thought the evidence sustained the demand for partition by licitation, instead of in kind, and that the interest of all concerned would be best subserved by the sale of the property to effect the partition and to pay the claims and debts recognized, and in this we agree with him.
As to other amendments of the judgment prayed for, the subject matter of same formed issues which must be held to have been passed upon when the cause was first before this court and not having been reserved or left open by the decree then rendered, are considered closed.
This brings us to the consideration of the claim of the opponent, E. S. Kidd, based upon the paraphernal rights of his mother, the wife of the first marriage.
The payment of the $4,000.00 by the father, just prior to his death, to the opponent is not considered to have been a full and final settlement of the indebtedness the father owed the son on account of inheritance from, his mother, nor intended by the parties at the time as such full and final settlement.
With regard to this paraphernal debt, it was considered, in the former opinion of the court, that the evidence adduced in support of it was hardly sufficient to justify a judgment for an amount over and above the $4,000.00 paid by the father as above stated.
But a strong impression was left upon the mind of the court that a just claim for a larger sum existed in favor of the opponent, the which he had been unable to make out by a sufficiency of testimony on account of the unfortunate destruction by fire in 1878 of the public records of, Jackson parish.
Since it was necessary to remand the case anyhow on the question of,, partition presented, the court concluded, ini the interest of justice, to reverse the judgment of the District Court rejecting the paraphernal de-„ mand of opponent, and to leave that issue open for the administration of further proof and for decision anew in the trial court.
On the second trial certain additional and important evidence was offered. Some of it was received, some ruled out on objection made. ..
There were offered certain entries from a book kept by I. J, Sims, the. *2116 father of the first wife. These entries, in the handwriting of Mr. Sims, showed items of cash and property donated by him to his children. The book was sufficiently identified and his handwriting proven. .
Mr. Sims was, at the time the entries were made, an old man; his family of children were grown; his daughters were marrying off; his sons setting themselves up in business.
He evidently determined to make among them a distribution, partially so at least, of his property before he died.
Accordingly, in 1869, he donated to his daughter, Mrs. Sarah A. Allen, property and money of the aggregate value of $2,874.00; to his daughter, Miss Eliza P. Sims, the same amount in property and money; to his daughter, Mrs. Elizabeth Frances Allen, the same amount in property and money; and to his son, William E. Sims, the same amount in property and money.
A separate entry as to each donee is made in the book under the date of May 1, 1869, showing painstaking care, method and business precision.
• His aim, apparently, was to give to each daughter and son exactly the same amount to a cent. He himself fixed the value upon the land donated, upon the personal property given, and mentioned the kind of money given — so much in gold, so much in United States currency.
The year following these donations to the daughters and son mentioned, another daughter, Martha R. Sims, wedded J. I. Kidd.
To make her equal with her sisters and brothers mentioned, and following out his plan of partial distribution of his estate while living, Mr. Sims, on March 18th, 1871, entered in his book a statement that he had donated to her 680 acres of land, which he describes in the entry by legal subdivisions and values at $1,000.00; also that he had donated to her $1,000.00 in gold, $500.00 in United States currency, another $150.00 n in lieu of a horse,” ton head of cattle, valued at $65.00, 100 bushels of corn valued at $75.00, and 1200 pounds of pork valued at $84.00 — all of the aggregate value of $2,874.
This was the exact amount he had previously donated to each of his other children.
All these entries were offered in evidence on behalf of opponent to prove (1) That I. J. Sims, the common ancestor, had given the same amount to each of his children and to show uniformity of donation; (2) to eorrobrate, strengthen and verify the evidence of witnesses Smith and Allen as to donations made by said Sims to his children, and *2117 the statements of J. I. Kidd, in his letter to M. N. Smith, which had been offered and received in evidence, in which the latter acknowledged the receipt of the property and money as shown by the entry made by Mr. Sims in his book in 1871.
• Objection having been made, the entries were ruled out on the ground that they were unsworn statements, were not proved to be correct, and were ex yarte as to the tutrix and minors.
A bill was reserved and copies of the entries were annexed to same and thus brought up.
The letter referred to from J. I. Kidd to N¿ M. Smith bears the date of June 20, 1881, and in it Kidd acknowledges that he, or “us”, as hp expresses it (meaning himself and/his^first wife) had received $2,850.00 from I. J. Sims, his wife’s father. Efe used this language: “ Now, you will find at Mrs. Sims, in the book which I. J. Sims kept against us all, he gave us $2,850.00.,” etc.
Here was Kidd’s admission of the receipt of paraphernal property and funds of his wife, and the entries in the book kept'by Mr. Sims, to which the letter referred, were confirmatory thereof, and, as such, admissible in evidence.
There was testimony that notarial, acts of donation from Sims to his children, including-'one to Mrs. Martha R. Kidd, had been seen of record ¿n Jackson parish, where these people lived, but the destruction of the public records by fire prevented this higher order of proof, and left, as the next best evidence of the contents of these acts of donation, the entries in the book of Mr. Sims and the letter of Kidd to Smith. The existtence of the act of donation being established.and its destruction by the burning of the courthouse shown, it was competent to prove its contents .■aliunde.
Taking this letter, the entries in the book and the testimony of Allen and Smith, it is established with sufficient certainty to produce conviction that Mr. Sims did donate to his daughter, Mrs. Kidd, after her marriage, property and money to the value of $2,874.00, an,d, further, it is sufficiently established by the testimony of Allen and Smith — one the brother-in-law of Kidd, the other the attorney of both Kidd and-Sims— and by the letter of Kidd, that the husband received and used the money and personal property donated, and administered the reality.
Evidently the entry made by Mr. Sims in his book of what he had given to his daughter Mrs. Kidd was made after the act of donation itself had been formally executed, for whereas the entry bears date of *2118 March 18, 1871, we find that in December preceding Mrs. Kidd, authorized by her husband, sold and conveyed the same land described in the entry to W. E. Sims for $3,000.00 — $500.00 of which was cash, the remainder, $2,500.00, in one note of the purchaser.
..¡Here was a considerable increase in the value of the land. Mr. .Sims had estimated it in his entry of the donation at $1,000.00.- It was sold shortly afterwards for $3,000.00.
Of this $3,000.00, the $500.00 paid cash undoubtedly passed into the hands of the husband and- was used by him. The $2,500.00 note was made payable to the wife, or bearer. The act of sale recites this -note was payable “ the first of January, 1870.” This was a period of time nearly eleven months anterior to the passing of the act of sale, which bears the date of 8th of December, 1870. It is clear that the recital in the act as to the.maturity of the note is an error, and that its maturity was fixed at some time subsequent to the sale. But what time? . We cannot supply the 1st of January, 1871. That was only twenty-three days later than the date of the sale, and if the note had been given for so short a time it does not seem reasonable the parties would have been so particular as to stipulate the note should draw interest from date, which is the recital of the deed.
, Evidence aliunde the deed does not supply the date of the maturity of this note.
. The wife died August 25, 1871 — some eight months subsequent to the execution of the act of sale and note.
.. Was the $2'500.000 paid before her death? We find in the record no sufficient evidence of the fact. Did it pass into the hands of the father before he assumed the duties of tutorship of his minor son ?
Equally does the record fail on this point.
.In the letter of the father to N. M. Smith in 1881, he makes no mention of this $2,500.00, though he was undertaking to give, as best h© could from menrory, what he had received on account of his wife and from her estate. He mentions the property and money, $2,850.00, received by donation to his wife from her father, but is silent as to moneys subsequently received on account of the sale of the very land which went tq make up in part the donated amount of “ $2,850.00”, as he puts it, but which should be, according to tlie entry in Sims’ book, $2,874.00.
We cannot break through the uncertainty which here exists as to the disposition made of the $2,500.00 note, the time of its collection, etc., and hold the father’s estate responsible for it on this paraphernal demand of the son.
*2119 From the $2,874.00 shown to have been donated to the wife, must be deducted the $1,000.00 valuation of -land included in the donation and subsequently sold by the wife.
This leaves $1,874.00 with which the father is chargeable. To this must be added the $500.00 cash portion paid for the land by W. F. Sims. These two amounts aggregate $2,374.00, for which opponent is entitled to judgment against his father’s succession, with five per cent, interest per annum thereon from August 25, 1871, the date of the mother’s death, less the $4,000.00 paid him by his father on January 28, 1896.
Nothing for the board and tuition of the opponent, E. S. Kidd, should be deducted from the amount thus allowed, for the reason that J. I. Kidd received several thousand dollars belonging to the minor after the death of his mother and which fell under his administration asi tutor.
While the prescription of four years has, as formerly decreed, barred the opponent’s right of action as to matters involved in the tutorship, it is considered that whatever allowance, if any, the father or his succession may be entitled to on account of the board and tuition; of the minor, the same should be held applied as a credit on the tutorship funds of the minor rather than on his claim arising upon the paraphernal rights of his mother, which had accrued' against the husband prior to her death.
When the expenses for board and tuition were incurred the tutorship liability had not prescribed. Neither had it when, the year following the majority of the opponent, his father furnished him with $100.00 for the purpose of taking a course of study in Soule’s Commercial College. For the same reason the latter amount is not deducted from the paraphernal allowance herein made.
For the reasons assigned, it is ordered and decreed that so much of the judgment appealed from as rejects the demand of the opponent, based upon the paraphernal rights of his mother accruing against J. I. Kidd prior to her death, be avoided and reversed, and it is now adjudged and decreed that said oppo.nent do have and recover of and from the Succession of J. I. Kidd, to be paid by priority over all other claims, save the costs of court, and the $250.00 paraphernal allowance made to the wife of the second marriage, and concurrently with the latter, the sum of $2,374.00 with 5 per cent, per annum interest thereon from August 25th, 1871, less $4,000.00 paid January 28, 1896.
It is further ordered, etc., that in all other respects the judgment appealed from be affirmed — costs of both courts to be borne by the Succession of J. I. Kidd.